# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| United States of America | CRIMINAL COMPLAINT |
|---|---|
| v. | CASE NUMBER: |
| 1. Jorge Alain Corona | |
| 2. Alejandro Corona | 26-3011 MJ |
| 3. Jonathan Ventura Bravo | |
| 4. Marvin Agustin Teutle | |
| 5. Jesus Roberto Corella Mares | |
| 6. Rosario Agustin Teutle | |
| 7. April Denise Corral Aldecoa, | |
| 8. Linda-Ana Grace Camarillo, and | |
| 9. Jose Ruben Quiroz | |

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

On or about the dates described in Attachment A in the District of Arizona, the defendants violated 18 U.S.C. §§ 371, 922(a)(6) & 924(a)(2), and 924(a)(1)(A), offenses described as follows:

**See Attachment A – Description of Counts**

I further state that I am a Special Agent with Bureau of Alcohol, Tobacco, Firearms and Explosives and that this complaint is based on the following facts:

**See Attachment B, Statement of Probable Cause, Incorporated by Reference Herein.**

Continued on the attached sheet and made a part hereof:    ☒Yes    ☐ No

AUTHORIZED BY: Travis L. Wheeler, AUSA

Digitally signed by TRAVIS WHEELER
Date: 2026.01.27 14:34:45 -07'00'

| SA Jesus Alvarez, ATF | JESUS ALVAREZ  Digitally signed by JESUS ALVAREZ  Date: 2026.01.27 14:15:45 -07'00' |
|---|---|
| Name of Complainant | Signature of Complainant |

Sworn to telephonically before me

January 27, 2026                          at      Phoenix, Arizona
Date                                                         City and State

HONORABLE MICHAEL T. MORRISSEY
United States Magistrate Judge                    M Morrissey
Name & Title of Judicial Officer                    Signature of Judicial Officer

## ATTACHMENT A

## COUNT 1

### CONSPIRACY TO COMMIT THE OFFENSE OF MAKING A MATERIAL FALSE STATEMENT DURING THE PURCHASE OF A FIREARM

### (18 U.S.C. §§ 371, 922(a)(6) & 924(a)(2))

#### Introduction

1.      Only licensed firearms importers, manufacturers, or dealers may engage in the business of dealing in firearms or in the course of such business may ship or transport firearms in interstate and foreign commerce.

2.      At all times relevant to this complaint, the Defendants JORGE ALAIN CORONA, ALEJANDRO CORONA, APRIL DENISE CORRAL ALDECOA, LINDA-ANA GRACE CAMARILLO, JONATHAN VENTURA BRAVO, MARVIN AGUSTIN TEUTLE, ROSARIO AGUSTIN TEUTLE, JESUS ROBERTO CORELLA MARES, and JOSE RUBEN QUIROZ were not licensed under the provisions of Chapter 44 of Title 18, United States Code to deal in firearms.

3.      At all times relevant to this complaint, Sprague's Sports, Flawless Ballistics, Inc., Grips by Larry, EJS Magazines and Clips and Gun Accessories LLC, and Pistol Parlour were Federal Firearms Licensees (FFLs) operating in Arizona and licensed under the provisions of Chapter 44 of Title 18, United States Code.  As such, the provisions of Chapter 44 of Title 18 required FFLs to maintain certain records of firearms transaction, including Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Form 4473, Firearms Transaction Record.  ATF Form 4473 requires a firearms purchaser truthfully to provide certain information, including the purchaser's residential address and whether the person purchasing a firearm is the true purchaser of the firearm.

//

//

**The Conspiracy to Commit the Offense of Making a Material False Statement**
**During Purchase of a Firearm**

4.    From on or about an unknown date through on or about April 21, 2024, in the District of Arizona and elsewhere, Defendants JORGE ALAIN CORONA, ALEJANDRO CORONA, APRIL DENISE CORRAL ALDECOA, LINDA-ANA GRACE CAMARILLO, JONATHAN VENTURA BRAVO, MARVIN AGUSTIN TEUTLE, ROSARIO AGUSTIN TEUTLE, JESUS ROBERTO CORELLA MARES, and JOSE RUBEN QUIROZ did knowingly and intentionally combine, conspire, confederate, and agree together and with persons known and unknown, to commit the offense of Making a Material False Statement in the Acquisition of a Firearm, in violation of Title 18, United States Code, Sections 922(a)(6) and 924(a)(2).

**Purpose of the Conspiracy**

5.    The purpose of this conspiracy was to (i) unlawfully acquire firearms at the direction of and on the behalf of other individuals not residing in Arizona, (ii) by means of the use false statements and representations that were made with the intent that said false statements and representations would be submitted into the records required by law to be kept by FFLs; and (iii) export and/or send firearms to the true purchasers and end users; specifically, with regard to the false statements and presentations used in the purchase of each firearm, that the individual completing the record was the actual transferee/buyer of the firearm and not acquiring the firearm on behalf of another person, when in fact the individual completing the record was acquiring the firearm on behalf of another person. The firearms that were acquired pursuant to this conspiracy included:

- One Barrett, model 107A1, .50 caliber BMG rifle, serial number AE009805;
- Two Barrett, model 82A1, .50 caliber BMG rifles, serial numbers AA009858; AA014677;
- Five Ohio Ordnance Works, model M2-SLR, .50 caliber BMG rifle, serial

2

number 850392; 850404; 850406; 850440; and 850483;

- Four Ohio Ordnance Works, model M240 SLR, 7.62 caliber rifles, serial numbers: 241050, 241083, 241084, and 241085;
- One Glock, model 17 Gen 4, 9mm pistol, serial number AGLN365;
- One Glock, model 47, 9mm pistol, serial number BZXM627;
- One FN America, model 249S, 5.56x45mm caliber rifle, serial number M249SA09468

### The Means and Method of the Conspiracy

6.     The means and methods employed by Defendants and their known and unknown coconspirators to carry out the conspiracy and effect its unlawful object are as follows:

a. It was part of the conspiracy that certain Defendants would receive orders and directions regarding the acquisition of firearms from other Defendants and/or co-conspirators who were the true purchasers of the firearms.

b. It was further part of the conspiracy that certain Defendants would coordinate the delivery of money to purchase the firearms to the individuals or other Defendants who were purchasing the items.

c. It was further part of the conspiracy that certain Defendants would purchase the firearms themselves or find other individuals to purchase the firearms from FFLs in the District of Arizona.

d. It was further part of the conspiracy that other individuals or the Defendants would purchase firearms at the direction of, and on behalf of, the other Defendants and/or co-conspirators in exchange for payment.

e. It was further part of the conspiracy that, in purchasing the firearms, these individuals or Defendants would make false statements and representations to the FFLs. In connection with each illegal purchase of a firearm, the purchasing

individual or a Defendant would state that s/he was the actual transferee/buyer of the firearm(s).

f.  It was further part of the conspiracy that certain Defendants would sometimes transport the individual who was purchasing the firearms to the business of the FFL to purchase the firearms.

g.  It was further part of the conspiracy that, after the firearms were purchased, certain Defendants would coordinate the delivery of the purchased firearms to the Defendants or other co-conspirators.

**Overt Acts**

7.      In furtherance of the conspiracy, one or more of the Defendants and co-conspirators committed, or caused to be committed, the overt acts described below:

a.  In March 2020, Defendant JORGE ALAIN CORONA recruited coconspirator Julian Barajas to purchase a firearm (Barrett, model 82A1, .50 caliber BMG rifle, serial number AA009858) from Sprague's Sports, an FFL in Yuma, Arizona. During the purchase, Mr. Barajas represented on ATF Forms 4473 that he was the actual purchaser of the firearms when in fact he was acquiring the firearms on behalf of other people in exchange for payment.

b.  On December 2, 2022, JORGE ALAIN CORONA and ALEJANDRO CORONA recruited co-defendants APRIL DENISE CORRAL ALDECOA and LINDA-ANA GRACE CAMARILLO to purchase firearms from Flawless Ballistics, Inc., an FFL operating at the Crossroads of the West Gun Show in Phoenix, Arizona. JORGE ALAIN CORONA drove CORRAL and CAMARILLO to the Crossroads of the West Gun Show, provided them with cash to purchase the firearms and instructions on which firearms to purchase.

c.  CORRAL successfully completed the purchase of a firearm (Barrett, model 82A1, .50 caliber BMG rifle, serial number AA0014677). During that purchase,

CORRAL represented on the ATF Form 4473 that she was the actual purchaser of the firearm, when in fact she was acquiring the firearm on behalf of JORGE ALAIN CORONA in exchange for payment.

d. CAMARILLO attempted to purchase a firearm (Barrett, model 82A1), and completed an ATF Form 4473 representing that she was the actual purchaser of the firearm, when in fact she was attempting to acquire the firearm on behalf of JORGE ALAIN CORONA in exchange for payment.

e. JORGE ALAIN CORONA successfully completed the purchase of a firearm (Barrett, M107A1 .50 caliber rifle, serial number AE009805). During that purchase, JORGE ALAIN CORONA completed an ATF Form 4473 representing that he was the actual purchaser when in fact he was acquiring the firearm on behalf of other individuals.

f. After finishing at the gun show, JORGE ALAIN CORONA drove CORRAL and CAMARILLO back to Yuma, Arizona, where he paid CORRAL and CAMARILLO $2,000 for their straw purchase. JORGE ALAIN CORONA also provided CORRAL with a fake bill of sale for the one firearm she purchased.

g. On or about July 2, 2023, ALEJANDRO CORONA recruited coconspirator MARVIN AGUSTIN TEUTLE to straw purchase four firearms on his behalf from Barrett James Weinberger, the operator of Flawless Ballistics Inc., an FFL based in Tucson, Arizona. ALEJANDRO CORONA provided MARVIN with $150,000 in cash to complete the purchase.

h. Before MARVIN purchased the firearms (four Ohio Ordnance Works, model M2-SLR, .50 caliber BMG rifles, serial numbers 850392; 850404; 850406; and 850440), Weinberger transferred ownership of the firearms to Grips by Larry, an FFL based in Hereford, Arizona. MARVIN subsequently completed the purchase of the four firearms from Grips by Larry. During that purchase

MARVIN completed an ATF Form 4473 (dated July 2, 2023) representing that he was the actual purchaser of the firearms, when in fact he was acquiring the firearms on behalf of ALEJANDRO CORONA in exchange for payment. After purchasing the firearms, MARVIN transported and delivered the firearms to ALEJANDRO CORONA. In exchange, ALEJANDRO CORONA paid MARVIN a total of $14,000 for completing the straw purchase.

i.  Once in possession of the firearms, ALEJANDRO CORONA arranged for the firearms to delivered to the coconspirator or other individual who was the true purchaser of the firearm. On March 24, 2025, authorities with the Government of Mexico recovered one of those firearms (Ohio Ordnance Works, model M2-SLR, .50 caliber BMG rifle, serial number 850406).

j.  On or about July 26, 2023, JORGE ALAIN CORONA and ALEJANDRO CORONA recruited JONATHAN VENTURA BRAVO, ROSARIO AGUSTIN TEUTLE, and JESUS ROBERTO CORELLA MARES to straw purchase firearms from EJS Magazines and Clips and Gun Accessories LLC, an FFL in Kingman, Arizona.

k.  During this event, JORGE ALAIN CORONA and BRAVO each completed an ATF Form 4473 (dated July 26, 2023) and purchased a total of six firearms from the FFL (four Ohio Ordnance Works, model M240 SLR, 7.62 caliber rifles, serial numbers: 241050, 241083, 241084, and 241085; one Glock, model 17 Gen 4, 9mm pistol, serial number AGLN365; and one Glock, model 47, 9mm pistol, serial number BZXM627).

l.  JORGE ALAIN CORONA, on the ATF Form 4473 he completed, provided a false address and indicated that he was the actual purchaser of the firearms, when in fact he was acquiring the firearms for another person.

m. BRAVO, on the ATF Form 4473 he completed, indicated that he was the actual

purchaser of the firearms when in fact he was acquiring the firearms for another person.

n. On that same day, July 26, 2023, ROSARIO and CORELLA MARES drove from Phoenix, Arizona, to the same FFL in Kingman, Arizona, and attempted to purchase firearms.

o. ROSARIO attempted to purchase an Ohio Ordnance Works, model M240 SLR, 7.62 caliber rifles, serial number: 241086. During the attempted purchase, ROSARIO completed an ATF Form 4473, dated July 26, 2023, before abandoning the purchase due to lack of payment. On the ATF Form 4473, ROSARIO provided an incorrect address and represented that she was the actual purchaser of the firearm, when in fact she was acquiring the firearm for another person. At a subsequent post-*Miranda* interview, ROSARIO told investigators that she was to be paid $1,500 for the firearm purchase but was never paid because the transaction was not completed.

p. CORELLA MARES also attempted to purchase a firearm (an Ohio Ordnance Works, model M240 SLR, 7.62 caliber rifles, serial number: 241049), and completed an ATF Form 4473. On the ATF Form 4473, dated July 26, 2023, CORELLA MARES represented that he was the actual purchaser of the firearm when in fact he was acquiring the firearm for another person.

q. In November 2023, ALEJANDRO CORONA recruited MARVIN AGUSTIN TEUTLE to straw purchase a firearm (an Ohio Ordnance Works, model M2-SLR, .50 caliber BMG rifle, serial number 850483) from Pistol Parlour, an FFL in Mesa, Arizona.

r. ALEJANDRO CORONA provided money to MARVIN to complete the purchase. On November 3, 2023, after receiving the money, MARVIN ordered the firearm from an online website to be delivered to Pistol Parlour in Mesa,

Arizona. On November 7, 2023, MARVIN drove with CORELLA MARES to Pistol Parlour to attempt to complete the purchase of the firearm. CORELLA MARES attempted to complete the purchase and collect the firearm but was not permitted to do so because MARVIN's credit card was used to order the firearm. The sale of the firearm was not completed, and on November 14, 2023, ATF administratively seized the firearm from Pistol Parlour.

s.  On January 4, 2024, ALEJANDRO CORONA and JORGE ALAIN CORONA recruited JOSE RUBEN QUIROZ to complete the straw purchase of a firearm (one FN America, model 249S, 5.56x45mm caliber rifle, serial number M249SA09468) from Firearms Unknown, an FFL in Yuma, Arizona. QUIROZ completed the purchase and delivered the firearm to ALEJANDRO, who paid QUIROZ $4,000 after delivery.

t.  During the purchase, QUIROZ completed an ATF Form 4473, dated January 4, 2024, representing that he was the actual purchaser of the firearm when in fact he was acquiring the firearm for ALEJANDRO CORONA in exchange for payment. After receiving the firearm from QUIROZ, ALEJANDRO CORONA gave the firearm to an unknown person at County 19 Street, in Yuma, Arizona.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2

**MATERIAL FALSE STATEMENT DURING THE PURCHASE OF A FIREARM**

On or about December 2, 2022, in the District of Arizona, Defendant APRIL DENISE CORRAL ALDECOA, in connection with the acquisition of a firearm from a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, knowingly made a false and fictitious statement to the licensed firearms dealer, Flawless Ballistics, Inc., which statement was intended and likely to deceive the dealer as to a fact material to the lawfulness of such sale of said firearm to the Defendant under Chapter 44 of Title 18, in that the Defendant executed a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, Firearm Transaction Report, stating she was the actual transferee/buyer of the firearm, whereas in truth and fact, she knew she was buying the firearm on behalf of another person.

In violation of Title 18, United States Code, Sections 922(a)(6) and 924(a)(2).

## COUNT 3

**MATERIAL FALSE STATEMENT DURING THE PURCHASE OF A FIREARM**

On or about December 2, 2022, in the District of Arizona, Defendant LINDA-ANA GRACE CAMARILLO, in connection with the acquisition of a firearm from a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, knowingly made a false and fictitious statement to the licensed firearms dealer, Flawless Ballistics, Inc., which statement was intended and likely to deceive the dealer as to a fact material to the lawfulness of such sale of said firearm to the Defendant under Chapter 44 of Title 18, in that the Defendant executed a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, Firearm Transaction Report, stating she was the actual transferee/buyer of the firearm, whereas in truth and fact, she knew she was buying the firearm on behalf of another person.

In violation of Title 18, United States Code, Sections 922(a)(6) and 924(a)(2).

## COUNT 4

**MATERIAL FALSE STATEMENT DURING THE PURCHASE OF A FIREARM**

On or about July 2, 2023, in the District of Arizona, Defendant MARVIN AGUSTIN TEUTLE, in connection with the acquisition of firearms from a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, knowingly made a false and fictitious statement to the licensed firearms dealer, Grips by Larry, which statement was intended and likely to deceive the dealer, as to a fact material to the lawfulness of such sale of said firearms to the Defendant under Chapter 44 of Title 18, in that the Defendant executed a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, Firearm Transaction Report, stating he was the actual transferee/buyer of the firearms, whereas in truth and fact, he knew he was buying the firearms on behalf of another person.

In violation of Title 18, United States Code, Sections 922(a)(6) and 924(a)(2).

## COUNT 5

**MATERIAL FALSE STATEMENT DURING THE PURCHASE OF A FIREARM**

On or about July 26, 2023, in the District of Arizona, Defendant JONATHAN VENTURA BRAVO, in connection with the acquisition of firearms from a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, knowingly made a false and fictitious statement to the licensed firearms dealer, EJS Magazines and Clips and Gun Accessories LLC, which statement was intended and likely to deceive the dealer as to a fact material to the lawfulness of such sale of said firearms to the BRAVO under Chapter 44 of Title 18, in that the Defendant executed a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, Firearm Transaction Report, stating he was the actual transferee/buyer of the firearms, whereas in truth and fact, he knew he was buying the firearms on behalf of another person.

In violation of Title 18, United States Code, Sections 922(a)(6) and 924(a)(2).

## COUNT 6

**MATERIAL FALSE STATEMENT DURING THE PURCHASE OF A FIREARM**

On or about July 26, 2023, in the District of Arizona, Defendant JESUS ROBERTO CORELLA MARES, in connection with the acquisition of a firearm from a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, knowingly made a false and fictitious statement to the licensed firearms dealer, EJS Magazines and Clips and Gun Accessories LLC, which statement was intended and likely to deceive the dealers, as to a fact material to the lawfulness of such sale of said firearm to the Defendant under Chapter 44 of Title 18, in that the Defendant executed a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, Firearm Transaction Report, stating he was the actual transferee/buyer of the firearm, whereas in truth and fact, he knew he was buying the firearm on behalf of another person.

In violation of Title 18, United States Code, Sections 922(a)(6) and 924(a)(2).

## COUNT 7

**MATERIAL FALSE STATEMENT DURING THE PURCHASE OF A FIREARM**

On or about July 26, 2023, in the District of Arizona, Defendant ROSARIO AGUSTIN TEUTLE, in connection with the acquisition of a firearm from a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, knowingly made a false and fictitious statement to the licensed firearms dealer, EJS Magazines and Clips and Gun Accessories LLC, which statement was intended and likely to deceive the dealers, as to a fact material to the lawfulness of such sale of said firearm to the Defendant under Chapter 44 of Title 18, in that the Defendant executed a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, Firearm Transaction Report, stating she was the actual transferee/buyer of the firearm, whereas in truth and fact, she knew she was buying the firearm on behalf of another person.

In violation of Title 18, United States Code, Sections 922(a)(6) and 924(a)(2).

## COUNTS 8-9

### FALSE STATEMENT DURING THE PURCHASE OF A FIREARM

On or about the dates below, in the District of Arizona, Defendant JORGE ALAIN CORONA knowingly made false statements and representations to the businesses below, which are licensed under the provisions of Chapter 44 of Title 18, United States Code, with respect to information required by the provision of Chapter 44 of Title 18, United States Code, to be kept in the records of the business, in that Defendant JORGE ALAIN CORONA did execute a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Form 4473, Firearms Transaction Record, stating that he resided at the address listed on the ATF Form 4473, when in truth and in fact, he knew he resided at a different address.

| Count | Date | FFL (Business) |
|-------|------|----------------|
| 8 | December 2, 2022 | Flawless Ballistics, Inc. (Tucson, Arizona) |
| 9 | July 26, 2023 | EJS Magazines and Clips and Gun Accessories, LLC (Kingman, Arizona) |

In violation of Title 18, United States Code, Sections 924(a)(1)(A).

## ATTACHMENT B
## STATEMENT OF PROBABLE CAUSE

Your Affiant, Special Agent Jesus Alvarez, being first duly sworn, hereby deposes and states as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been since March 2015. I am currently assigned to the ATF Los Angeles Field Division, El Centro Field Office.

2.      I received my formal training at the Federal Law Enforcement Training Center ("FLETC"), located in Glynco, Georgia, completing both the Criminal Investigator Training Program and Special Agent Basic Training.  During these two (2) academies at FLETC, I received specialized training in several law enforcement criteria including, but not limited to, the following: writing of legal documents such as court orders and warrants, the handling of evidence, proper search procedures, and understanding United States Code ("U.S.C.") relating to firearms, explosives, arson, alcohol, and tobacco.

3.      As an ATF Special Agent my duties and responsibilities include conducting criminal investigations of individuals and entities for possible violations of federal laws, particularly those laws found in Titles 18, 21, and 26 of the U.S.C.  I have personally participated in and conducted criminal investigations pertaining to the illegal acquisition of firearms, possession of firearms by prohibited persons, smuggling of firearms and narcotics, investigations involving interstate and international firearms trafficking, and investigations involving narcotics trafficking.  As such, the result of many of these investigations have led to arrests; searches; and seizures of individuals, property, firearms, and narcotics involved in violations of Federal laws.

4.      The statements contained in this Affidavit are based on information derived

from your Affiant's personal knowledge, training and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers; information provided by a confidential source; analysis of public records; analysis of social media information; analysis of telephone records; and analysis of financial records.

## **BACKGROUND**

5.    Based upon my training and experience, your affiant is aware firearms traffickers often illegally obtain firearms by utilizing either misrepresented or fraudulently obtained identification documents.

6.    It is common for individuals who are involved in the illegal acquisition and/or trafficking of firearms to obtain firearms from associates who are not prohibited from purchasing or possessing firearms.    These associates are known as "straw purchasers."  The "straw purchaser" buys a firearm in his/her own name from a Federal Firearms Licensee (FFL) and subsequently transfers the firearm to a prohibited person or firearms trafficking recruiter.  A straw purchaser is often used to avoid detection by law enforcement.

7.    During each firearm purchase from an FFL, the buyer will complete an ATF Form 4473 which asks, "Are you the actual transferee/buyer of all the firearm(s) listed on this form and any continuance sheet(s)?" There is also an admonition which reads: **"Warning: You are not the actual transferee/buyer if you are acquiring any of the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer any of the firearm(s) to you."** Just above where the buyer signs the ATF Form 4473 there is a certification and warning that states by signing this form the buyer is certifying their answers are true, correct and complete. By signing the form, he buyer further acknowledges the notices, instructions, and definitions, to include the

following: "**I further understand that the repetitive purchase of firearms for the purpose of resale to predominantly earn a profit without a federal firearms license is a violation of federal law.**"

8.      Firearms traffickers and straw purchasers also purchase firearms of similar make and model, consistent with firearm trafficking techniques.

9.      It is common for individuals who are involved in the illegal acquisition and/or trafficking of firearms to obtain firearms from states known to law enforcement agents as "source states" such as Arizona, Nevada, and Texas. "Source states" typically have less restrictive firearms laws than other states that allow gun buyers to purchase multiple handguns in a single transaction in addition to semi-automatic rifles. Typically, these individuals are "straw purchasers" who obtain several firearms from a "source state," which are then transported to the states or countries where it is more difficult or illegal to obtain certain firearms, such as California or Mexico.

10.     It is common for individuals involved in firearms trafficking to obliterate serial numbers and other manufacturer's markings from firearms to thwart law enforcement attempts to trace the origin and identity of firearms.

## CURRENT INVESTIGATION

11.     Since approximately March 2020, law enforcement has been conducting an investigation into a firearms trafficking ring operating in the District of Arizona. Over the course of that investigation, law enforcement has identified dozens of targets actively participating in, or facilitating the action of, the firearms trafficking ring.

      a. Specifically, law enforcement identified two individuals, JORGE Alain Corona and ALEJANDRO Corona, as brokers/recruiters/smuggling coordinators for the firearms trafficking ring.

      b. Law enforcement also identified at least seven other individuals, including Jonathan Ventura BRAVO, MARVIN Agustin Teutle, Jesus Roberto

CORRELLA MARES, ROSARIO Agustin Teutle, April Denise CORRAL Aldecoa, Linda-Ana Grace CAMARILLO, and Jose Ruben QUIROZ, who on one or more occasions served or attempted to serve as a straw purchaser of a firearm for JORGE and ALEJANDRO in exchange for money or other compensation.

12.     Based on the specific facts set forth below, your affiant submits that there is probable cause that each of the above-named individuals committed the crime of Conspiracy to Commit the Offense of Material False Statement During the Purchase of a Firearm, in violation of Title 18 United States Code, §§ 371, 922(a)(6) and 924(a)(2).

<u>March 2020 Straw Purchase - JORGE</u>

13.     In March 2020, the Bureau of Alcohol, Tobacco, Firearms and Explosives received a tip that a potential straw purchase of a Barrett, model 82A1, .50 caliber BMG rifle, was occurring at Sprague's Sports, a Federal Firearms Licensee (FFL).

a.  The tip stated that on March 14, 2020, Julian Barajas had ordered the Barrett rifle from Sprague's Sports, paying $9,756.00.

b.  On March 19, 2020, your Affiant collected surveillance footage from Sprague's Sports. The video depicts Mr. Barajas arriving in a silver Lincoln MKZ, and placing an order for the Barrett rifle. While placing the order, Mr. Barajas gave his address as being on S. Avenue C, in Yuma, Arizona.

c.  Between March 19, 2020, and March 27, 2020, law enforcement conducted surveillance on Mr. Barajas and discovered that the listed address he had listed in his application to purchase the Barrett rifle did not belong to him.

14.     On March 27, 2020, ATF agents conducting surveillance of Mr. Barajas watched as he picked up the Barrett rifle he had ordered from the Sprague's Sports, exited the FFL with the rifle, and transported it to an apartment complex located on West 12th St. in Yuma, Arizona. As Mr. Barajas exited his vehicle, ATF agents approached and

questioned Mr. Barajas regarding his purchase of the firearm.

15.    During recorded interview, Mr. Barajas admitted he did not live at the residence he had provided to the FFL, and that he had purchased the firearm on someone else's behalf. Mr. Barajas further explained he had responded to a story on Snapchat recruiting straw purchasers:

    a. According to Mr. Barajas, a Snapchat profile named "Compa George" posted a question on Snapchat asking who wanted to make money.

    b. Mr. Barjas responded to the story and "Compa George" asked Mr. Barajas to purchase a Barrett rifle for him.

    c. Mr. Barajas told ATF agents he was going to be paid between $800-$1,000 for the straw purchase.

    d. When asked how he knew "Compa George", Mr. Barajas told ATF agents he had sold "Compa George" a French Bulldog several years ago and that they have been Snapchat friends ever since.

    e. Mr. Barajas described "Compa George" as a Hispanic male, in his late twenties, nerdy, short, with a dark complexion.

    f. Mr. Barajas stated that, after agreeing to purchase the rifle for him, "Compa George" sent Mr. Barajas an address on the west side of Yuma called "the lanes."

    g. Mr. Barajas subsequently drove to the location and was provided the money and description of the firearm to be purchased. After receiving the money, Mr. Barajas went to Sprague's Sports and ordered the firearm.

    h. Mr. Barajas stated that he called "Compa George" earlier that day (March 27, 2020) via Snapchat to inform "Compa George" he was on his way to *Sprague's Sports* to pick up the firearm. "Compa George" instructed Mr. Barajas to hold onto the firearm for a while.

16.     Mr. Barajas showed your Affiant the Snapchat profile name used by "Compa George." Your Affiant noticed the social media profile name was bmx_julian~jorgecorona2. Mr. Barajas showed agents where he met "Compa George," in the 8400 block of Mojave Lane, Yuma, Arizona.

17.     Your Affiant is aware JORGE Alain Corona uses the alias, George. Additionally, JORGE's Arizona driver's license shows his name as "Jorge Alain Corona" and his address as 8472 S. Yavapai Lane, Yuma, Arizona – one block from where "Compa George" directed Mr. Barajas to meet him.

18.     Your Affiant believes that JORGE is the same person as "Compa George", and that JORGE coordinated Mr. Barajas's March 2020 straw purchase of the Barrett .50 caliber rifle from an FFL in Yuma, Arizona.



*(Barrett, model 82A1, .50 caliber BMG rifle, S/N AA009858, seized from Barajas)*

<u>December 2022 Straw Purchase - JORGE and ALEJANDRO</u>

19.     On December 2, 2022, ATF Industry Operations Investigators (IOIs) were conducting Firearms Industry outreach at the annual Crossroads of the West gun show and small arms review event, in Phoenix, Arizona. While at the event, the IOIs received multiple reports that an FFL with a booth at the event, later identified as FLAWLESS BALLISTICS INC, was conducting "disturbing firearms sales" to individuals that were paying for the firearms with large "stacks of cash."

20.     In response to these reports, the IOIs contacted ATF special agents, who then instructed the IOIs to contact the FLAWLESS BALLISTICS INC FFL and obtain any ATF Forms 4473 of questionable firearms sales.

21.     IOIs went the FLAWLESS BALLISTICS INC FFL's booth location and observed the FFL for several minutes. During that time, IOIs observed the following:

    a.  IOIs visually confirmed the reports that the FFL was selling high-end belt fed rifles, AK-47 variant rifles, AR variant rifles, and numerous Lew Horton Colt El Series 1911s, all in .38 Super caliber. Your affiant notes that all of these firearms are favored by Mexican Cartel members and are highly diverted from the regular firearms business and trafficked to Mexico.

    b.  IOIs also observed that the FLAWLESS BALLISTICS INC FFL had a cash counter, and that the FFL was running large stacks of cash through the counter and then placing the stacks of cash into a bank cash bag.

    c.  IOIs also observed three individuals located just outside the FLAWLESS BALLISTICS INC FFL's booth. Two of the individuals, a younger male and younger female, were sitting down at the booth table, completing ATF Forms 4473. The third individual, a younger female, was standing behind the two seated individuals. All three individuals appeared to be Hispanic.

22.     After observing the FLAWLESS BALLISTICS INC FFL for a period of

time, IOIs contacted the Responsible Person (RP) for the FFL at the booth, and identified themselves as ATF Investigators. The IOIs noted that as soon as they identified themselves to the RP, the young male and female sitting at the booth table get up and inform the FFL employee assisting them that they would return later. The two individuals attempted to take their ATF Forms 4473 with them, but the forms were collected by the FFL employee.

23.     After identifying themselves to the RP, IOIs informed the RP that they had received multiple reports that the FFL might be facilitating straw purchases of firearms to questionable individuals.

      a.  The RP confirmed to IOIs that he conducted all of his business in cash, but told IOIs that each person who purchased a firearm had passed a NICS background check.

      b.  When asked about whether he found it suspicious for young females to present him with thousands of dollars in cash to purchase firearms they can't lift, much less shoot, RP answered that he questioned customers in those situations and stated that he had a small Hispanic female just purchase a Barrett M82. RP stated that the female told him that her brother had a Barrett, that she had shot it, and that she wanted one of her own. RP also stated the female purchaser could not pick up the firearm at the booth, and had a male with her carry it out.

      c.  IOIs asked the RP to provide them with all ATF Forms 4473 he would complete that weekend, including the two partially completed ATF Forms 4473 left by the two individuals that left upon the IOIs arrival. The RP agreed and provided the IOIs with those forms.

24.     The two abandoned ATF Forms 4473 identified those individuals as Linda-Ana CAMARILLO, from Yuma, Arizona, and JORGE ALAIN CORONA, from Yuma, Arizona.

a. CAMARILLO was completing the form for the purchase of a Barrett M82 Rifle. CAMARILLO did not return to the booth to complete the purchase.

b. JORGE was completing the form to purchase a Barrett M107A1 .50 caliber rifle. JORGE later returned to the booth and complete that purchase.

25.    The ATF Forms 4473 collected from the FLAWLESS BALLISTICS INC FFL showed that the RP sold another Barrett M82 to a young Hispanic female from Yuma, Arizona that weekend, named April Denise CORRAL Aldecoa. Investigators pulled CORRAL's driver's license photo and positively identified her as the third individual that was with CAMARILLO and JORGE when investigators arrived.

26.    On August 15, 2023, at approximately 11:34 a.m., ATF Special Agents met with CAMARILLO at her residence in Avondale, Arizona. CAMARILLO agreed to speak with law enforcement, and the interview was audio recorded.

a. During the interview, CAMARILLO confirmed her identifying information, including date of birth, social security number, employment history, and phone number. CAMARILLO denied owning or previously purchasing any firearms.

b. When agents asked CAMARILLO about the events of December 2, 2022, CAMARILLO explained that JORGE had recruited her and her significant other, CORRAL, to purchase firearms for him in exchange for $2,000.

c. CAMARILLO stated that JORGE drove her and CORRAL from Yuma to Phoenix for the gun show. JORGE instructed both CAMARILLO and CORRAL to purchase a specific firearm, but when agents approached the table with their badges, JORGE became very nervous and went outside to wait in the vehicle. CAMARILLO completed her ATF Form 4473, but was told her background check would take 24 hours to clear. CAMARILLO never completed the purchase because JORGE wanted the firearms

immediately and did not want to wait for the background check.

d. CAMARILLO told law enforcement that CORRAL successfully purchased a rifle, which JORGE kept.

e. After the gun show, JORGE drove both CAMARILLO and CORRAL back to Yuma, Arizona, where he paid them $2,000 in cash for the straw purchase. JORGE told them that he would provide them with a bill of sale for the gun he was keeping, but she never received it.

27.     On August 15, 2023, at approximately 4:03 p.m., ATF Special Agents met with CORRAL at her residence in Yuma, Arizona. CORRAL agreed to speak with law enforcement, and the interview was audio recorded.

a. During the interview, CORRAL confirmed her identifying information, including date of birth, social security number, employment history, and phone number.

b. When agents asked CORRAL if she knew why ATF wished to speak with her, CORRAL stated probably because of JORGE ALAIN CORONA. CORRAL said she previously purchased firearms for JORGE.

c. When asked to elaborate on that, CORRAL stated she met JORGE through a mutual friend, who told CORRAL and CAMARILLO that JORGE was paying cash for anyone willing to purchase firearms on his behalf.

d. CORRAL stated she knew JORGE and his brother probably worked for the cartel and made a lot of money. CORRAL told investigators that JORGE told her that he was taking the firearms to Mexico.

e. On December 1, 2022, CORRAL communicated with JORGE via phone calls and text messages, and JORGE convinced CORRAL and CAMARILLO to purchase firearms on his behalf.

f. At approximately midnight on December 2, 2022, JORGE picked up

CORRAL and CAMARILLO at their residence on Shell Ave. in Yuma, Arizona, and then drove them to Phoenix, Arizona, where they rented a hotel room.

g. Later that morning, between 11:00 a.m. and 12:00 p.m., JORGE, CORRAL, and CAMARILLO, left the hotel room and headed to the gun show. When they arrived, JORGE gave CORRAL and CAMARILLO stacks of cash and told them to purchase a Barrett rifle. CORRAL stated she remembered that JORGE had money spread all over the truck and was carrying a plastic bag with about $50k in cash.

h. Upon entry into the gun show, JORGE began looking for the guy he usually purchased firearms from, which he shortly found. While JORGE and CAMARILLO were seated at the booth, an ATF employee approached the vendor. CORRAL stated JORGE was avoiding the ATF employee and headed back to his truck. JORGE communicated with CORRAL via text message and informed her which firearm to purchase, which she successfully did.

i. CORRAL stated that CAMARILLO also attempted to purchase a .50 caliber rifle, but her background check was delayed and JORGE did not want to wait.

j. After completing the firearm purchase, CORRAL went back to JORGE's truck. JORGE then went back into the gun show and returned with a dark colored case, which JORGE put in the back of the truck.

k. CORRAL told law enforcement that they met JORGE's older brother at the gun show. According to CORRAL, JORGE received orders from his brother, who communicated with their boss. CORRAL said that after the gun show, JORGE dropped his brother off at a residence in Phoenix, before driving CORRAL and CAMARILLO back to Yuma, and dropping them off at their

Shell Ave. residence. CORRAL said they were paid $2,000 for the straw purchase and JORGE kept the firearm.

l. CORRAL also provided investigators with consent to search her phone. During the consent search, agents found messages between her and "George", a known alias of JORGE, as well as photographs and text messages regarding the straw purchase, including pictures of CAMARILLO sitting at a booth at the gun show with stacks of cash, and a fake bill of sale JORGE provided to her for the firearm.

m. CORRAL informed agents she stopped purchasing firearms for JORGE because she did not feel comfortable doing so, and she believed that JORGE and his brother probably could not purchase firearms themselves because of a criminal record or prior felony.

n. When agents showed CORRAL the ATF Form 4473 she completed on December 2, 2022, and asked if she was the actual purchaser, CORRAL admitted she was not, and admitted to lying on the ATF Form 4473 reference question 21.a.

28.    Based on these facts, your Affiant submits that there is probable cause CORRAL and CAMARILLO committed the crimes of Conspiracy to Commit Material False Statement During the Purchase of a Firearm, in violation of Title 18 United States Code, §§ 371, 922(a)(6) and 924(a)(2).

//

//

//



*(Photos of December 2, 2022, text message conversation between JORGE and CORRAL)*

<u>April 21, 2024 Interview of ALEJANDRO</u>

29.     On April 21, 2024, Agents conducted a post-*Miranda* interview with ALEJANDRO Corona, at the San Luis Port of Entry, in the District of Arizona.

30.     Prior to the interview, ALEJANDRO was advised of his *Miranda* rights via ATF Form 3200.4. ALEJANDRO stated he understood his rights, signed the form, and agreed to speak with law enforcement regarding their ongoing investigation into the firearms trafficking ring. The interview was audio recorded.

    a.  During the interview, ALEJANDRO confirmed his identifying information, including date of birth, social security number, phone number, email address, nicknames, address, and employment history.

    b.  ALEJANDRO admitted that he had been working as a coordinator and recruiter for the firearms trafficking ring operating in the District of Arizona.

    c.  ALEJANDRO explained that his role was to recruit straw purchasers, provide the straw purchasers with the money and a description of what firearms to purchase. All firearms purchases were made in cash.

    d.  ALEJANDRO explained that sometimes he would deposit the cash into his Wells Fargo account and later withdraw the cash in Phoenix, Arizona, but he would never deposit more than $9,000 at one time to avoid banking reporting requirements. ALEJANDRO stated he did this to avoid questions at US Border Patrol checkpoints. ALEJANDRO also stated he would tape money to his body when going through checkpoints.

    e.  ALEJANDRO stated that once firearms had been purchased, he would transfer the firearms to two co-conspirators: "Homo" (later identified as Salvador Reynaldo Garcia Moreno) and "Noe". ALEJANDRO explained that Homo and Noe would smuggle bulk currency into the United States to facilitate the firearms purchases and also smuggle the firearms into Mexico

by hiding them in the sound system of Homo's vehicle.[1]

    f.  When asked to name the straw purchasers he had recruited or helped to recruit, ALEJANDRO did so. Specifically, ALEJANDRO named:

        i.  MARVIN AGUSTIN TEUTLE

        ii.  ROSARIO AGUSTIN TEUTLE

        iii.  JESUS ROBERTO CORELLA MARES

        iv.  LINDA-ANA GRACE CAMARILLO

        v.  APRIL DENISE CORRAL ALDECOA

        vi.  JOSE RUBEN QUIROZ

    g.  ALEJANDRO proceeded to detail transactions and straw purchases completed by each of the individuals named above, as described throughout this affidavit.

        *July 2, 2023 Straw Purchase – MARVIN and ALEJANDRO*

31.    ALEJANDRO provided the following specific details regarding the July 2, 2023, Straw Purchase made by MARVIN:

    a.  ALEJANDRO told law enforcement that, in early July 2023, he had recruited MARVIN to purchase five M2 .50 caliber rifles on ALEJANDRO's behalf. ALEJANDRO stated that MARVIN made the purchase from an FFL named "Barrett," whom ALEJANDRO positively identified as Barrett James Weinberger from FLAWLESS BALLISTICS INC. FFL.

---

[1] Salvador Reynaldo Garcia Moreno was charged in a separate indictment with violations of 18 U.S.C. §§ 371, 554(a), and 2. (*See United States v. Garcia Moreno*, CR-24-01650-PHX-SHD at Doc. 1.) On September 10, 2025, Garcia Moreno pleaded guilty to one count of Smuggling Goods from the United States, Aid and Abet, in violation of 18 U.S.C. § 554(a) and 2. (*Id.* at Doc. 85.) Garcia Moreno is set to be sentenced in his case on February 21, 2026. (*Id.* at Doc. 119.)

b. ALEJANDRO recalled having met MARVIN in Bisbee, Arizona, and providing him with $150k in cash for the firearms purchase. ALEJANDRO stated that MARVIN was put in direct communication with Weinberger during the transaction.

c. After receiving the cash from ALEJANDRO, MARVIN met with Weinberger at a bar in Bisbee, Arizona, before traveling with Weinberger to a warehouse where the firearms transaction was completed.

d. ALEJANDRO stated that after providing MARVIN with the money, he was stopped by police near Bisbee, Arizona, driving his rented Jeep. Law enforcement was able to confirm both the rental vehicle dates – from July 1 through July 4, 2023 – and traffic stop by Arizona Department of Public Safety of the rented Jeep – which occurred on July 2, 2023, at 13:45 on AZ-92 at milepost 326 in Sierra Vista, Arizona.

e. After MARVIN purchased the firearms from Weinberger, MARVIN transported them to Tucson, Arizona, where he delivered them into ALEJANDRO's possession. After receiving the firearms from MARVIN, ALEJANDRO drove them to County 19 in Yuma, Arizona, where he gave them to a co-conspirator to be smuggled into Mexico.

f. ALEJANDRO stated that he paid MARVIN $5,000 on the day of the purchase and later sent him an additional $9,000 through an intermediary, for a total of $14,000 in payments for the July 2, 2023, M2 straw purchase.

32.    On May 28, 2024, your Affiant and another law enforcement agent met with and interviewed MARVIN at his residence in Laveen, Arizona. The interview was audio recorded.

a. During that interview, MARVIN told agents that he had met a man named ALEJANDRO through Facebook. MARVIN told agents he would speak

31

with two different individuals on that account, but "did not know who was who." Law enforcement agents were aware that ALEJANDRO and JORGE would communicate with straw purchasers through Facebook messenger and text messages. MARVIN confirmed to law enforcement that he later met ALEJANDRO in person through a work friend at a bar in the Phoenix area.

b. According to MARVIN, in or around July 2023, ALEJANDRO asked MARVIN if he could get some "juguetes" (toys/firearms), and MARVIN agreed to do so. ALEJANDRO directed MARVIN to make the pickup in Bisbee, Arizona. When traveling to make the pickup, MARVIN was sent a pin drop location and he traveled to that location. Once MARVIN arrived at the location, a black GMC SUV honked at him, and he followed the vehicle to a big shop near Bisbee. When shown a photo of the GMC SUV owned by Barrett Weinberger, MARVIN confirmed that the vehicle he met with looked like the one in the photo.

c. When MARVIN arrived at the shop in Bisbee, he met with two older white males. One of the males requested MARVIN's identification card and completed paperwork for the firearms, which MARVIN later signed. The completed paperwork was an ATF Form 4473.

d. According to MARVIN, he never answered any questions or paid for the firearms. After the paperwork was complete, MARVIN received the four large boxes containing the firearms and left the meeting.

e. MARVIN subsequently transported and delivered the firearms to two unknown Hispanic male subjects. According to MARVIN, upon delivery of the firearms to the two individuals, they provided MARVIN with a "bill of sale" for the guns, but MARVIN did not have possession of that bill of sale.

f. When asked by agents where he believed the guns were going to, MARVIN

said Mexico, because what else could they want them for?

33.    The ATF Form 4473 completed on July 2, 2023, and signed by MARVIN shows the purchase of four Ohio Ordnance Works, model M2-SLR, .50 caliber BMG rifles (serial numbers 850392; 850404; 850406; and 850440) from the FFL "Grips by Larry" in Hereford, Arizona. Further records show that Barrett Weinberger and Grips by Larry are associates, and that the firearms MARVIN straw purchased from Grips by Larry were initially purchased by Weinberger before being transferred to Grips by Larry prior to being sold to MARVIN.[2]






*(Pictures of the 850406 Rifle after it was seized by the Government of Mexico)*

---

[2] On March 24, 2025, authorities with the Government of Mexico seized multiple firearms, including an Ohio Ordinance Works, Model M2-SLR, .50 BMG rifle, with serial number 850406 – the same firearm purchased by MARVIN from Grips by Larry on July 2, 2023. ATF Trace Summary of that rifle shows that it was purchased on March 6, 2023 by Weinberger.

34.    Based on these facts, your Affiant submits that there is probable cause that MARVIN committed the crimes of Conspiracy to Commit Material False Statement During the Purchase of a Firearm, in violation of Title 18 United States Code, §§ 371, 922(a)(6) and 924(a)(2).

<u>July 26, 2023 Straw Purchase – JORGE, BRAVO, ALEJANDRO</u>

35.    On July 26, 2023, JORGE Corona and Jonathan Ventura BRAVO straw purchased a total of four M240 rifles and two Glock pistols from EJS Magazines and Clips and Gun Accessories LLC, an FFL in Kingman, Arizona ("EJS").

36.    Law enforcement learned of the potential straw purchases when they received an alert from the National Instant Criminal Background Check System (NICS) that JORGE's information had been submitted by EJS. Upon receiving the alert, ATF made telephonic contact with the owner of EJS.

    a.  The owner of EJS explained that on July 22, 2023, while at the Phoenix Gun Show, located at the Ben Avery Shooting Facility, 4044 W. Black Canyon Blvd., Glendale, Arizona, JORGE and BRAVO approached EJS's booth and inquired if EJS could obtain M240 rifles.

    b.  EJS told JORGE and BRAVO that EJS could get the rifles, however, the rifles needed to be ordered and paid for upfront. JORGE and BRAVO left the booth, but returned later that day with $52,000 cash ($26,000 each) to purchase the firearms.

    c.  EJS told law enforcement that JORGE and BRAVO each ordered two M240 rifles, and that JORGE provided EJS with his phone number (831-210-6364).

37.    According to EJS, on Tuesday, July 25, 2023, JORGE called EJS asking if the rifles had arrived. EJS said that JORGE had used the same number he had previously provided to make the call (831-210-6364). EJS told JORGE the firearms would be arriving the next day, on July 26, 2023.

38.     The next day, when JORGE and BRAVO arrived at EJS to pick up the rifles, they each selected a Glock pistol and added the firearm to their order. Prior to finalizing their respective purchases, both JORGE and BRAVO completed an ATF Form 4473 for EJS. On their respective forms, JORGE listed his address as "8472 S. Yavapai Lane, Yuma, AZ, 85364," and BRAVO listed his address "1986 S. 47th Ave., Yuma, AZ, 85364." After completing the forms, JORGE and BRAVO were able to purchase the following six firearms:

### JORGE:

- Ohio Ordnance Works Inc., M240-SIR, 7.62X51 mm rifle, serial # 241083
- Ohio Ordnance Works Inc., M240-SIR, 7.62X51 mm rifle, serial # 241084
- Glock, G47, 9mm pistol, serial number BZXM627

### BRAVO:

- Ohio Ordnance Works Inc., M240-SIR, 7.62X51 mm rifle, serial # 241085
- Ohio Ordnance Works Inc., M240-SIR, 7.62X51 mm rifle, serial # 241050
- Glock, G17, 9mm pistol, serial number AGLN365

39.     EJS told law enforcement that JORGE and BRAVO were travelling in a newer-model white Toyota passenger car, but that EJS was unable to obtain a license plate.

40.     After communicating with EJS, law enforcement made preparations to interdict the vehicle believed to be transporting the firearms from Kingman to Yuma, Arizona. Specifically, law enforcement agents were strategically placed monitoring traffic along Highway 95, at JORGE's family residence (8472 S. Yavapai Lane, Yuma, AZ 85364), and at BRAVO's residence (1986 S. 47th Ave, Yuma, AZ 85364) in an attempt to conduct the firearms interdiction.

41.     That evening, at approximately 9:24 p.m., your affiant spotted a white 2023 Toyota Camry bearing Arizona License Plate CWS0594, traveling westbound from the Intersection of Highway 95 and Fortuna Road, Yuma, AZ.  A license plate check revealed

the vehicle was a rental from "Ean Holdings LLC." Your affiant is aware Ean Holdings LLC is associated to Enterprise Leasing Company LLC.

42.    Your affiant caught up to the vehicle and noticed two male occupants matching JORGE's and BRAVO's description. Your affiant could see the driver was wearing glasses and the passenger continued looking straight ahead. Your affiant was able to see the occupants when the vehicle stopped at the intersection of Highway 95 and S. Avenue 7E. The intersection is well lit, and the rental vehicle did not have tinted windows. Your affiant was driving an unmarked government vehicle and was wearing "plain clothes," with his firearm concealed from public view.

43.    Your affiant relayed the information to the Yuma Police Department ("YPD"). A YPD officer began pacing the rental vehicle near Pacific Avenue and Highway 95. The YPD officer conducted a traffic stop for the civil traffic violation of speeding, near the Pacific Avenue Athletic Complex, 1700 E. 8th Street, Yuma, AZ 85364.

44.    The YPD officer informed your affiant during his interaction with JORGE, YPD learned the following:

   a.    YPD officers asked JORGE if he had any weapons in the vehicle. JORGE informed the officers he had firearms in the trunk, and consented to opening the trunk to show those firearms; however, JORGE denied consent for officers to search the cab of his vehicle.

   b.    When Jorge CORONA opened the truck, YPD officers could see four (4) Ohio Ordnance Works Inc., M240 rifles and two (2) Glock pistols. Officers also observed a French Bulldog inside the vehicle. SP1 had previously stated "Compa George" owned a French Bulldog.

   c.    JORGE told officers he was coming from Kingman, Arizona and was heading home.

   d.    JORGE explained he purchased two M240 rifles and a Glock pistol, and that

BRAVO purchased the other two M240 rifles and the other Glock pistol.

    e.  JORGE said he paid $15,000 per rifle. When asked about the rifles, JORGE knew the make, model, and caliber of the firearm. JORGE also explained he was unemployed but claimed he had made $36,000 within the last six months which he saved. JORGE told officers he had rented the vehicle that same day.

45.    YPD officers also spoke with BRAVO.

    a.  Prior to being questioned, BRAVO was asked to step out of the vehicle and asked if he had any weapons on his person. BRAVO stated he did not but had two rifles and a pistol in the trunk.

    b.  When officers asked BRAVO about the make, model, and caliber of the firearms, BRAVO did not provide a response. When officers inquired about the cost of the firearms and BRAVO did not provide a response. When asked where he obtained the money, BRAVO did not respond.

    c.  When asked what he did for work, BRAVO informed officers he was unemployed but previously worked as a truck driver until he was fired approximately two weeks prior. BRAVO stated he was involved in an accident and fired from his job. BRAVO stated they traveled from Lake Havasu, AZ and he was on his way home.

46.    As YPD was dealing with the traffic stop, ATF simultaneously interviewed the occupants of the addresses listed on the ATF Form 4473 provided to EJS by JORGE and BRAVO.

    a.  At that time, your affiant learned JORGE did not live at the address he listed on his ATF Form 4473. On his form, JORGE listed 8472 S. Yavapai Lane, Yuma, AZ 85364 as his home address.

    b.  ATF interviewed ALEJANDRO Corona, who lived at that address. ALEJANDRO told law enforcement that JORGE did not live at the Yavapai

address. According to ALEJANDRO, JORGE now lived in California with his mother and had been living in California for approximately one year.

   c.  JORGE supposedly worked in the Agricultural Industry and did not receive any mail at the Yavapai address, nor did he have access to the residence.

47.    YPD completed their traffic stop and issued JORGE a warning for speeding.

48.    After YPD finished with JORGE and BRAVO, your Affiant approached JORGE and asked to speak with him. Your Affiant has spoken to CORONA face-to-face, and JORGE fits the description given by Jorge Barajas from the March 2020 event, (as specified in paragraph 15 of this affidavit).

   a.  Your Affiant informed JORGE he had some questions about his recent firearm purchases. First, your Affiant asked JORGE where he currently lived. Initially, JORGE said he was living at 8472 S. Yavapai Lane, Yuma, Arizona 85364 with his brother, but immediately changed his mind without being prompted and said he was currently living in California.

   b.  At that time, your Affiant read JORGE his *Miranda* warning from a standard ATF Form. JORGE stated he wanted a lawyer present before answering any further questions, and agents concluded the interview.

49.    ATF also interviewed BRAVO following the traffic stop and provided him with his *Miranda* warnings from the standard ATF Form. BRAVO informed agents he wished to remain silent and "do the lawyer and stuff" and agents again concluded the interview.

50.    Based on the above information, your affiant believed there was evidence of a federal crime inside the rental vehicle.

   a.  YPD Officers had observed six firearms inside the trunk of the vehicle rented by JORGE.

   b.  ATF was aware JORGE had lied on an ATF Form 4473 about his Arizona

residential address and was actually a California resident.

c.   Your affiant seized six (6) firearms, (1) Red iPhone cellular phone, and firearm accessories from the vehicle.  The following items were taken from the vehicle:

- Ohio Ordnance Works Inc., M240-SIR, 7.62X51 mm rifle, serial # 241083[3]
- Ohio Ordnance Works Inc., M240-SIR, 7.62X51 mm rifle, serial # 241084[4]
- Ohio Ordnance Works Inc., M240-SIR, 7.62X51 mm rifle, serial # 241085[5]
- Ohio Ordnance Works Inc., M240-SIR, 7.62X51 mm rifle, serial # 241050[6]
- Glock, G47, 9mm pistol, serial number BZXM627[7]
- Glock, G17, 9mm pistol, serial number AGLN365[8]
- Red iPhone used by JORGE – found on dash.
- Fifty (50) rounds of 9mm Fiocchi Ammunition – (17 rounds were loaded into a magazine / the magazine and ammunition was located inside the Glock gun case belonging to BRAVO)
- Six (6) Tool Kits for a M240
- Six (6) M240 Slings
- Six (6) Safety Glasses
- Six (6) Plastilube – comes with M240
- Six (6) M240 Operating and Technical Manuals

//

//

_____

[3] The firearm purchased by Jorge CORONA on July 26, 2023.
[4] The firearm purchased by Jorge CORONA on July 26, 2023.
[5] The firearm purchased by BRAVO on July 26, 2023.
[6] The firearm purchased by BRAVO on July 26, 2023.
[7] The firearm purchased by Jorge CORONA on July 26, 2023.
[8] The firearm purchased by BRAVO on July 26, 2023.



*(Photo of six guns seized from JORGE and BRAVO on July 26, 2023)*

51.    ATF also seized a Black iPhone from JORGE and a Black Android TCL cellular phone from BRAVO. YPD Officers had observed JORGE using the red iPhone. YPD stated JORGE was on a phone call and the officers could see the screen displaying an international phone number starting with the numbers "52." Your Affiant knows that "52" is the international code for Mexico.

52.    On August 9, 2023, ATF obtained a federal search warrant for the three phones seized on July 26, 2023. On August 14, 2023, an extraction was completed of a red

iPhone 11, serial number DNPZK44HN72L, phone number (928) 287-1672.

53.     A review of the extracted contents showed the following conversations, coordinating multiple straw purchases set to occur on July 26, 2023.

54.     In the first conversation, between JORGE and an individual identified as "Ace" (928-318-7199), JORGE appears to solicit straw purchasers to assist with multiple firearms purchases. JORGE's conversation with Ace takes place between July 22, 2023, and July 26, 2023.

    a.  On July 22, 2023, JORGE sent a text message to "Ace" (928-318-7199) and identified himself as "Mac" with the dog. Law enforcement knows that JORGE owns a French Bulldog and commonly travels with his dog. During the conversation, JORGE informed "Ace" he needed four (4) people by Tuesday and would pay $2,000 for "whoever buys 'em."

    b.  On July 24, 2023, Ace informed JORGE he had three people ready.

    c.  On July 25, 2023, JORGE says if they left that night he would pay for a hotel and gas. Ace said one person had a "whip" (vehicle) and the other two people did not. JORGE asked Ace if the person with the vehicle could take one person and he would take the other person. They agreed to meet the following morning at a gas station at 8 a.m.

    d.  On July 26, 2023, Ace informed JORGE that two people did not answer, and he was trying to find "somebody else real quick." JORGE said he was going to take a shower and get a car.

    e.  At 10:39 a.m., JORGE informed Ace he got a car. According to the Enterprise receipt, JORGE rented the car from Enterprise Leasing Company at 10:29 a.m.

    f.  Ace subsequently informed CORONA the other two people "flaked" (backed out) and only one was ready. Ace sent JORGE a phone number – (928-503-

2147).

g.  At 10:58 a.m., JORGE informed Ace he had picked up the person "I got him we going."

h.  JORGE then asked Ace "I'll pay u u pay him," Ace responded "Yeah."

i.  At 10:43 a.m., BRAVO sent JORGE an address, "1986 S. 47th Ave." JORGE informed that BRAVO "12 mins out." At 10:55 a.m., JORGE sends BRAVO a text stating "Here." Your affiant is aware that 1986 S. 47th Avenue is the residence of BRAVO.

55.    In a second conversation between JORGE and MARVIN Teutle (listed as "Mars" in the phone), JORGE coordinates a second attempted straw purchase from EJS on July 26, 2026. JORGE's conversation with MARVIN took place between July 25, 2023 and July 26, 2023.

a.  On July 25, 2023, JORGE sent a text message to MARVIN (listed as "Mars") at phone number (602-785-6299), stating "Soy el pri tu pa" (I'm your dad's cousin). In his May 28, 2024, interview with law enforcement, MARVIN confirmed that he used the phone number ending in 6299 to communicate with JORGE.

b.  JORGE went on to tell MARVIN that he (JORGE) would be contacting him from a Mexican number.

c.  JORGE asked MARVIN if he would be "ready" the following day. MARVIN responded that he thought the job was that day (July 25, 2023). MARVIN told JORGE that he (MARVIN) had to work the following day but would be ready after 2 p.m.

d.  JORGE explained he would be in Phoenix around 11 a.m. the following day, and that "the place" was in Kingman.

e.  JORGE said he could meet MARVIN in Kingman since they (the firearms)

were already paid for.

    f.   MARVIN said he had received a ticket for an expired registration on his Jeep and they would be taking "la troca de mi compa." (His friend's truck).

    g.   On July 26, 2023, JORGE sent MARVIN the address of the EJS FFL in Kingman, Arizona. JORGE said he would meet them there. MARVIN said it was three hours and sent an imagine of his Apple maps.

    h.   JORGE said he would pay them there. MARVIN said "Si ah mi carnala" (yes, to my sister). MARVIN's "sister" was later identified as ROSARIO AGUSTIN TEUTTLE.

    i.   JORGE asked MARVIN about the price, saying "300" and MARVIN responded he was told 400, referring to the price to be paid for the purchase.

    j.   At 3:59 p.m., MARVIN asked JORGE if he was almost there, JORGE responded yes, and that he was charging his phone.

    k.   At 4:33 p.m., MARVIN sent JORGE a photo of an M240 rifle.

56.    In a third conversation between JORGE and an unknown co-conspirator using a Mexican phone number, JORGE keeps the co-conspirator informed of the ongoing straw purchasing activity. Specifically:

    a.   On July 26, 2023, at 11:16 a.m., an unknown subject from an international phone number starting with the numbers "52" asked JORGE if he could leave "them" at the office.

    b.   At 1:31p.m., the unknown subject told JORGE to keep him informed and advise him when JORGE was on his way home.

    c.   At 3:18 p.m., the unknown subject asked JORGE if he had arrived and tells JORGE to answer his phone. The subject said "Que anda hechando lumbre el Alejandro" (ALEJANDRO is pissed).

    d.   At 5:33 p.m., the unknown subject tells JORGE to advise him once he is

done.

e.  At 5:41 p.m., JORGE informs the unknown subject that JORGE is waiting for his approval "Duke que ando esperanto k me apruebenn." Through your affiant's training and experience, they knew a firearm purchaser must pass a background check and receive approval prior to taking possession of a firearm. Your Affiant learned the EJS FFL had run JORGE's background at 5:38 p.m.

f.  At 5:59 p.m., JORGE informed the subject, your guy didn't let me take them, he will bring them near me tomorrow. "No me dejo so Morro llevarmelas" "K manaba melas arima."

57.  Based on these messages, and the information obtained from the EJS FFL and the traffic stop of JORGE and BRAVO, your Affiant submits that there is probable cause to believe that JORGE and BRAVO committed the crimes of Conspiracy to Commit Material False Statement During the Purchase of a Firearm, in violation of Title 18 United States Code, §§ 371, 922(a)(6) and 924(a)(2).

<u>July 26, 2023 Straw Purchase – ROSARIO, JORGE, and CORELLA MARES</u>

58.  Based on the information obtained from the investigation of JORGE and BRAVO described above, Investigators learned of a second attempted straw purchase that took place on July 26, 2023, at EJS FFL in Kingman, Arizona.

59.  Specifically, evidence shows that ROSARIO Agustin Teutle ("ROSARIO") attempted to purchase an Ohio Ordnance Works, Ins, M240-SLR, 7.62 caliber rifle, serial number 241049 from EJS. According to EJS, no payment was received so the transaction was canceled. On her ATF Form 4473, ROSARIO listed "11391 W. Mountain View Drive, Avondale, Arizona 85323 as her residence.

60.  On December 13, 2023, ATF agents interviewed ROSARIO at her workplace about her activities on July 26, 2023. The interview was audio recorded.

a. During the interview, ROSARIO confirmed her identifying information, including date of birth, social security number, phone number, and address.

b. When asked whether she had ever purchased or attempted to purchase a firearm, ROSARIO stated that she had not.

c. When ATF agents showed ROSARIO the ATF Form 4473 completed by her on July 26, 2023, she explained that she had gone to the FFL by herself and had saved her money and worked a lot to purchase the firearm. Agents explained to ROSARIO that they knew her statements to be false.

d. ROSARIO then changed her story, stating that she attempted to purchase the firearm for a person she did not know and that she believed that person lived in Mexico.

e. ROSARIO stated that all she did was use her information to complete the ATF Form 4473. ROSARIO admitted to lying on the form about the true purchaser and her address.

f. When completing the form, ROSARIO was living at 6405 W. McDowell Road, #1102, Phoenix, Arizona. ROSARIO told agents that she used the Mountain View address on the ATF Form 4473 since she had not changed her address on her ID card.

g. ROSARIO told agents she was having financial issues when approached by an acquaintance who said they knew someone who would pay people to purchase firearms on their behalf.

h. ROSARIO stated she never had direct communication with the end user (purchaser) but was contacted by Jesus Roberto CORELLA MARES about completing the purchase of the firearm.

i. ROSARIO told agents that CORELLA MARES contacted her via text message, and they had agreed to meet at Baseline Road and 51st Street in

Phoenix.

j.  After ROSARIO met up with CORELLA MARES, the pair drove to the EJS FFL in Kingman, Arizona, in a vehicle driven by CORELLA MARES.

k.  ROSARIO told agents that, during the drive to the FFL, CORELLA MARES tried to convince ROSARIO not to buy the firearm. ROSARIO told agents that CORELLA MARES asked her if she knew what type of firearm they were purchasing, and that CORELLA MARES told her the firearm was capable of firing "200 bullets a minute" and that he believed the firearms were destined for Mexico.

l.  Once at the FFL, both ROSARIO and CORELLA MARES completed an ATF Form 4473. After completing the form, they left the store without making a payment or taking possession of any firearms. ROSARIO told investigators that she was supposed to be paid $1,500 for the firearm purchase but never received a payment since the transaction was never completed.

m.  Your Affiant showed ROSARIO a photograph of JORGE Corona. ROSARIO said she did not know JORGE but believed JORGE was at the FFL the day of the purchase. ROSARIO stated she recalled seeing JORGE as she and CORELLA MARES were leaving the business, and JORGE was walking into the store.

61.  On December 14, 2023, ATF agents contacted CORELLA MARES at his place of employment about his trip to the EJS FFL in Kingman, Arizona on July 26, 2023. The interview was audio recorded.

a.  During the interview, CORELLA MARES confirmed his identifying information, including his date of birth, social security number, phone number, and address.

b. When asked if he had ever purchased firearms, he stated that he had, and provided a list of several he had purchased.

c. Shortly thereafter, CORELLA MARES stated that he would like to continue the interview with the assistance of an attorney. Agents concluded the interview and requested that CORELLA MARES' attorney contact the agents to set up an interview.

62.     Based on these messages, and the information obtained from the EJS FFL, the traffic stop of JORGE and BRAVO, the interview of ROSARIO, and the other information detailed above, your affiant submits that there is probable cause to believe that ROSARIO and CORELLA MARES committed the crimes of Conspiracy to Commit Material False Statement During the Purchase of a Firearm, and Making a Material False Statement During the Purchase of a Firearm, in violation of Title 18 United States Code, §§ 371, 922(a)(6) and 924(a)(2).

<u>November 7, 2023 Straw Purchase – ALEJANDRO, MARVIN, CORELLA MARES</u>

63.     During the April 21, 2024, interview, ALEJANDRO told investigators that he had recruited MARVIN to purchase an additional M2 rifle in November 2023, and explained that the rifle was seized by law enforcement in Phoenix prior to MARVIN picking it up.

64.     Your Affiant knows that on November 14, 2023, Phoenix ATF seized an Ohio Ordnance Works, Inc., Model M2, serial number 850483 from Pistol Parlour (FFL). The order was made by MARVIN Augustin Teutle on November 3, 2023, and seized after CORELLA MARES attempted to pick up the firearm on November 7, 2023. The FFL declined to give CORELLA MARES the firearm because it was not his card that was used to make the order.

65.     On May 28, 2024, your Affiant interviewed MARVIN regarding the November 2023 purchase.

66.    According to MARVIN, CORELLA MARES requested to use MARVIN's credit card to purchase "something." MARVIN stated that CORELLA MARES deposited money into his (MARVIN's) Bank of America account in Mesa, Arizona. MARVIN was shown a picture of CORELLA MARES, and MARVIN positively identified CORELLA MARES as the person he was talking about. MARVIN also told investigators that ALEJANDRO Corona provided money to CORELLA MARES for the firearm purchase and then CORELLA MARES deposited that money into MARVIN's account.

67.    After depositing the money, CORELLA MARES asked MARVIN for a ride to the gun store. Upon arrival, CORELLA MARES attempted to purchase the rifle in his name, but the FFL did not allow CORELLA MARES to purchase the firearm since MARVIN's credit card was used to order the firearm.

<u>January 4, 2024 Straw Purchase – ALEJANDRO, JORGE, and QUIROZ</u>

68.    During his April 21, 2024 interview, ALEJANDRO also told investigators of a straw purchase conducted by Jose Ruben QUIROZ in January 2024. Specifically, ALEJANDRO told investigators that QUIROZ worked at Liberty Motorsports in Yuma, and that he had been recruited to purchase an M249 "minimi" rifle from Firearms Unknown (FFL). ALEJANDRO stated that he gave QUIROZ the money and told him what to purchase. After the rifle was purchased, ALEJANDRO took possession of the rifle from QUIROZ, paid QUIROZ $4,000, and gave the rifle to an unknown person at County 19.

69.    Further investigation corroborated ALEJANDRO's information. Records show on January 4, 2024, Jose Ruben QUIROZ purchased an FN America, M249S rifle from Firearms Uknown, an FFL, in Yuma, Arizona.

70.    On May 17, 2024, agents conducted a recorded interview with QUIROZ about the purchase.

    a. During the interview, QUIROZ initially stated that he had possession of the firearm for about three to four months before exchanging it with his brother

for a vehicle.

    b. When agents asked QUIROZ if there was anything about his story that he wanted to change, and QUIROZ replied that he had purchased the firearm for JORGE Corona, who he had known since high school.

    c. QUIROZ told investigators that JORGE had contacted him through Facebook messenger, using the profile username "Guaymitas Junior."[9]

    d. QUIROZ agreed to purchase the firearm for JORGE and the two met at QUIROZ's residence, 640 S. 1st Avenue, Yuma, Arizona.

    e. QUIROZ told investigators that JORGE gave QUIROZ the cash to pay for the firearm and instructed QUIROZ on which firearm to purchase.

    f. After the firearm purchase, QUIROZ met JORGE and ALEJANDRO back at QUIROZ's residence, where he transferred the firearm to the CORONA brothers. QUIROZ claimed he was paid $500 in cash and given some marijuana by JORGE in exchange for purchasing the rifle.

    g. QUIROZ told investigators that about a week after the purchase, JORGE instructed him to delete the messages between them.

71.    QUIROZ acknowledged he lied on the ATF Form 4473 for the January 4, 2024, purchase, but stated he needed the money.

72.    Agents showed QUIROZ a photo of both JORGE and ALEJANDRO; QUIROZ positively identified both subjects.

73.    QUIROZ granted agents consent to look at the Facebook messages between him and JORGE on his cell phone. The message thread started on February 9, 2024.

---

[9] Your Affiant is aware that JORGE and ALEJANDRO would often use the same social media accounts to communicate with potential straw buyers, resulting in instances where a straw purchaser was uncertain which CORONA brother they were communicating with.

QUIROZ stated that JORGE had instructed him to delete the other messages regarding JORGE's recruitment of QUIROZ for the straw purchase of the M249 rifle. The Facebook profile "Guaymitas Junior" had photographs of JORGE and his child.

74.    Based on the information received from ALEJANDRO and QUIROZ, as well as the information provided above, your Affiant submits that there is probable cause to believe that QUIROZ committed the crimes of Conspiracy to Commit Material False Statement During the Purchase of a Firearm, and Making a Material False Statement During the Purchase of a Firearm, in violation of Title 18 United States Code, §§ 371, 922(a)(6) and 924(a)(2).

//

//

//

//

//

//

//

//

//

## **CONCLUSION**

75.     Your Affiant submits there is probable cause Jorge Alain CORONA, Alejandro CORONA, April Denise CORRAL Aldecoa, Linda-Ana Grace CAMARILLO, Jonathan Ventura BRAVO, Marvin Agustin TEUTLE, Rosario Agustin TEUTLE, Jesus Roberto CORELLA MARES, and Jose Ruben QUIROZ committed the crimes of Conspiracy to Commit Material False Statement During the Purchase of a Firearm, in violation of 18 U.S.C. §§ 371, 922(a)(6) and 924(a)(2); Making a Material False Statement During the Purchase of a Firearm in violation of 18 U.S.C. § 922(a)(6) and 924(a)(2); and/or Making a False Statement During the Purchase of a Firearm in violation of 18 U.S.C. § 924(a)(1)(A).

JESUS ALVAREZ  Digitally signed by JESUS ALVAREZ
                              Date: 2026.01.27 14:17:41 -07'00'
_____
Special Agent Jesus Alvarez
Bureau of Alcohol, Tobacco, Firearms and Explosives

*Telephonically*

Subscribed and sworn to before me this 27th day of January, 2026.

M Morrissey
_____
HONORABLE MICHAEL T. MORRISSEY
United States Magistrate Judge